UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MO JEEWA<br><br>                    Plaintiff,<br><br>          v.<br><br>CYRUSONE INC., LYNN A. WENTWORTH, ALEX SHUMATE, DAVID H. FERDMAN, JOHN W. GAMBLE JR., T. TOD NIELSEN, DENISE OLSEN, and WILLIAM E. SULLIVAN,<br><br>                    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Mo Jeewa ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against CyrusOne Inc. ("Cyrus" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Cyrus, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Cyrus by Kohlberg Kravis Roberts & Co. L.P. ("KKR") and Global Infrastructure Management, LLC ("GIP"), through Cavalry Parent L.P. ("Parent") (the "Proposed Transaction"). Parent was formed solely for the purpose of entering

1

into the Proposed Transaction and will be controlled by the funds affiliated with KKR and GIP. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On November 14, 2021, the Company entered into an Agreement and Plan of Merger with Parent and Cavalry Merger Sub LLC, a wholly owned subsidiary of Parent ("Merger Agreement"), pursuant to which the Company's shareholders will be entitled to receive $90.50 in cash for each share of Cyrus common stock they own ("Merger Consideration").

3. On December 30, 2021, in order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) Cyrus' Financial Forecasts; (ii) the financial analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in connection with its fairness opinion for the Proposed Transaction; (iii) potential conflicts of interest for both Morgan Stanley and DH Capital, LLC ("DH Capital"), a second financial advisor engaged by the Company in connection with the Proposed Transaction; (iv) the Committee; (v) the resignation of the Company's former President and Chief Executive Officer; (vi) the non-disclosure agreements ("NDAs") executed between Cyrus and 11 potential acquirers in 2019; and (vii) the involvement of certain Cyrus shareholders in the sales process.

5. The special meeting of the Company's shareholders to vote on the Proposed Transaction will be held on February 1, 2022 ("Shareholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed prior to the Shareholder Vote, so

the Company's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to the Company's shareholders sufficiently before the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Cyrus common stock trades on the NasdaqGS, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's proxy solicitor, Okapi Partners is located in this District at 1212 Avenue of the Americas, New York, NY 10036. In addition, Cyrus' legal counsel in connection with the Proposed Transaction, Cravath, Swaine & Moore LLP, is located in this District at Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019.

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cyrus common stock.

11. Defendant Cyrus is a public company incorporated under the laws of Maryland with principal executive offices located at 2850 N. Harwood Street, Dallas, TX 75201. As mentioned above, the Company's common stock trades on the NasdaqGS under the ticker symbol "CONE."

12. Defendant Lynn A. Wentworth is, and has been at all relevant times, a director of the Company and Chair of the Board.

13. Defendant Alex Shumate is, and has been at all relevant times, Lead Independent Director of the Company.

14. Defendant David H. Ferdman is, and has been at all relevant times, a director of the Company, and its Interim Chief Executive Officer and President.

15. Defendant John W. Gamble Jr. is, and has been at all relevant times, a director of the Company.

16. Defendant T. Tod Nielsen is, and has been at all relevant times, a director of the Company.

4

17. Defendant Denise Olsen is, and has been at all relevant times, a director of the Company.

18. Defendant William E. Sullivan is, and has been at all relevant times, a director of the Company.

19. Defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.   Background of Cyrus, KKR, GIP, and the Proposed Transaction

20. Cyrus is a premier global REIT specializing in design, construction, and operation of more than 50 high-performance data centers worldwide. The Company provides mission-critical facilities that ensure the continued operation of IT infrastructure for approximately 1,000 customers, including approximately 200 Fortune 1000 companies. A leader in hybrid-cloud and multi-cloud deployments, Cyrus offers colocation, hyperscale, and build-to-suit environments that help customers enhance the strategic connection of their essential data infrastructure and support achievement of sustainability goals.

21. KKR is a private equity and real estate investment firm specializing in direct and fund of fund investments. It specializes in acquisitions, leveraged buyouts, management buyouts, credit special situations, growth equity, mature, mezzanine, distressed, turnaround, lower middle market and middle market investments. The firm considers investments globally in all industries with a focus on software, security, semiconductors, consumer electronics, internet of things (iot), internet, information services, information technology infrastructure, financial technology, network and cyber security architecture, engineering and operations, content, technology and

hardware, energy and infrastructure, real estate, services industry with a focus on business services, intelligence, industry-leading franchises and companies in natural resource, containers and packaging, agriculture, airports, ports, forestry, electric utilities, textiles, apparel and luxury goods, household durables, digital media, insurance, brokerage houses, non-durable goods distribution, supermarket retailing, grocery stores, food, beverage, and tobacco, hospitals, entertainment venues and production companies, publishing, printing services, capital goods, financial services, specialized finance, pipelines, and renewable energy.

22. GIP is a leading infrastructure investor. The funds and investment platforms managed by GIP make equity and debt investments in infrastructure assets and businesses in both OECD and selected emerging market countries, targeting investments in the energy, transport, digital, water/waste and infrastructure sectors. GIP has offices worldwide and manages over US$79 billion for its investors. GIP's funds currently own 40 portfolio companies, which have combined annual revenues of c. US$34 billion and employ in excess of 58,000 people.

23. According to the November 15, 2021, press release by Cyrus announcing the Proposed Transaction:

**CyrusOne to be Acquired by KKR and Global Infrastructure Partners in $15 Billion Transaction**

> **DALLAS – Nov. 15, 2021** – CyrusOne Inc. (NASDAQ: CONE) (the "Company" or "CyrusOne"), a premier global data center REIT, KKR, a leading global investment firm, and Global Infrastructure Partners ("GIP"), one of the world's leading infrastructure investors, today announced a definitive agreement pursuant to which KKR and GIP will acquire all outstanding shares of common stock of CyrusOne for $90.50 per share in an all-cash transaction valued at approximately $15 billion, including the assumption of debt.
>
> The $90.50 per share purchase price reflects a premium of approximately 25% to CyrusOne's unaffected closing stock price on September 27, 2021, the last full trading day prior to published market speculation regarding a potential sale of the Company.

"This transaction is a testament to the tremendous work by the entire CyrusOne team. We have built one of the world's leading data center companies with a presence across key U.S. and international markets supporting our customers' mission-critical digital infrastructure requirements while creating significant value for our stockholders," said Dave Ferdman, Co-Founder and interim President and Chief Executive Officer of CyrusOne. "KKR and GIP will provide substantial additional resources and expertise to accelerate our global expansion and help us deliver the timely and reliable solutions at scale that our customers value."

"Today's announcement is the culmination of a robust strategic review process conducted by the CyrusOne Board of Directors to determine the best path forward for the Company and maximize stockholder value," said Lynn Wentworth, Chair of the CyrusOne Board of Directors. "This transaction provides CyrusOne stockholders with significant value and simultaneously positions the Company to even better serve its customers to meet their needs in key markets around the world."

"CyrusOne has built one of the strongest data center companies in the world and has a strong track record of development and operational expertise in addition to delivering best-in-class service to its customers. We are excited to work together with the Company's proven team to build on CyrusOne's market leadership and support their customers' growing data center infrastructure requirements," said Waldemar Szlezak, Managing Director at KKR, and Will Brilliant, Partner at GIP. "We see numerous opportunities ahead to continue expanding CyrusOne's footprint across key global digital gateway markets and look forward to leveraging our global resources, access to long term capital and deep expertise to support the Company's growth."

(Emphasis in original).

## II.   The Proxy Omits Material Information

24.   Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed and disseminated to the Company's shareholders, to ensure that it did not contain any material misrepresentations or omissions. Thus, the Proxy should be supplemented prior to the Shareholder Vote, so Cyrus' shareholders can make an informed voting decision in connection with the Proposed Transaction.

25.   First, the Proxy omits certain material information concerning the Financial

Forecasts.

26. To start, the Proxy fails to disclose the figures underlying the inputs used to calculate the Company's Net Operating Income, Adjusted EBITDA, and Normalized FFO projections. Indeed, net income (loss) was used as an input to calculate all three of the above metrics, yet the Proxy entirely omits the net income projections for Cyrus. Indeed, net income projections are a crucial metric for shareholders to be apprised of when evaluating a transaction. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) ("The disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss.").

27. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See id.* (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

28. Moreover, the Proxy provides that the Financial Forecasts were provided to KKR, GIP, and "certain parties potentially interested in a transaction with the Company," yet it does not specify exactly which other parties were given the Financial Forecasts.

29. Second, the Proxy omits material information regarding the financial analyses performed by Morgan Stanley in connection with the Proposed Transaction.

30. For Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy omits the

following information: (i) the figures underlying the inputs used by Morgan Stanley to calculate Cyrus' Unlevered Free Cash Flow projections; (ii) the range of implied terminal enterprise values of Cyrus; (iii) the inputs and assumptions underpinning the Company's weighted average cost of capital of 5.6% to 6.4%; and (iv) the number of fully diluted shares of Cyrus outstanding as of September 30, 2021.

31. These key inputs are material to the Company's shareholders, and their omission renders the summary of Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added). Without the aforementioned, the Company's shareholders cannot evaluate for themselves the reliability of Morgan Stanley's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of

Cyrus, or were the result of an unreasonable judgment by Morgan Stanley, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

32. Additionally, for the *Analysts' Price Target Analysis* and *Net Asset Value* respectively, the Proxy does not provide the individual price targets for Cyrus published by each of the 20 equity research analysts that were observed by Morgan Stanley, as well as the NAV estimates for shares of common stock published by those same equity research analysts.

33. As for Morgan Stanley's *Comparative Public Trading Multiples Analysis*, the Proxy omits the individual multiples observed for each of the selected companies.

34. Similarly, for the *Precedent Premiums Paid Analysis*, the Proxy omits the individual premiums paid in each of the selected transactions.

35. Finally, regarding the *Precedent Data Center Transactions Analysis*, the Proxy also fails to disclose the individual multiples observed for each of the selected transactions.

36. <u>Third</u>, the Proxy fails to disclose information concerning potential conflicts of interest for Morgan Stanley and DH Capital in connection with the Proposed Transaction.

37. The Proxy states that Morgan Stanley has provided financing services for the Company and financial advisory and financing services to Parent, KKR, and GIP, and has received fees in connection with such services. However, the Proxy fails to disclose the specific services rendered by Morgan Stanley to each Cyrus, Parent, KKR, and GIP, along with the actual fees received by Morgan Stanley from each of those four parties for those services rendered.

38. Similarly, the Proxy discloses that Cyrus also engaged DH Capital to serve as financial advisor for the Company in connection with the Proposed Transaction. Yet, the Proxy fails to disclose the fees received by DH Capital from the Company for serving as

financial advisor, and whether DH Capital has rendered services for Cyrus, Parent, KKR, or GIP in the two years prior to the Proposed Transaction (and if so, the amount of fees received).

39.   **Fourth**, the Board formed the Committee to oversee and facilitate the Company's sales process. The Proxy provides that the Committee was composed of the following directors: Defendant Wentworth, Defendant Shumate, Defendant Ferdman, Defendant Olsen, and Defendant Sullivan. However, the Proxy omits the qualifications considered by the Board in choosing to appoint these five directors to the Committee.

40.   **Fifth**, on July 29, 2021, just as Cyrus was ramping up the sales process again, the Company's then President and Chief Executive Officer, Bruce W. Duncan, resigned. However, the Proxy does not disclose the reason for Mr. Duncan's resignation, and whether it was related to the Company's entry into the sales process again.

41.   **Sixth**, in 2019, Cyrus executed NDAs with 11 potential acquirers, including KKR, Party A, Party B, Party C, Party D, Party E, and Party F. However, the Proxy omits whether those NDAs contained standstill provisions, and if so, whether those standstill provisions contained "don't ask don't waive" ("DADW") provisions, including whether those provisions had fallen away upon execution of the Merger Agreement or still remain in effect. Failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed an NDA could have made a superior proposal. **But that is not true.** If that NDA contained a DADW provision, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, omission of this information is misleading because potential topping bidders in the marketplace may be precluded from making a superior offer.

11

42. <u>Seventh,</u> the Proxy indicates that during the course of 2021, Cyrus management and certain members of the Board had discussions with shareholders who encouraged Cyrus to explore the idea of a change-of-control transaction; yet the nature of these discussions and the names of the shareholders are not disclosed. This information is important because it may implicate that the Board was pressured by certain shareholders to sell the Company, which would amount to a material conflict of interest that Cyrus' shareholders are entitled to know about.

43. In sum, omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48. Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the Financial Forecasts; (ii) the financial analyses performed by Morgan Stanley in connection with the Proposed Transaction; (iii) potential conflicts of interest for both Morgan Stanley and DH Capital in connection with the Proposed Transaction; (iv) the Committee; (v) the resignation of Mr. Duncan; (vi) the NDAs executed between Cyrus and 11 potential acquirers in 2019; and (vii) the involvement of certain Cyrus shareholders in the sales process.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

50.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley reviewed and discussed their financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Morgan Stanley, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the Financial Forecasts and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Morgan Stanley's analyses in connection with their receipt of the fairness opinion, question Morgan Stanley as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement, and preparation and review of the Financial Forecasts.

52. Cyrus is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Cyrus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cyrus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

64. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

65. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

66. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless

and until the Company discloses the material information discussed above which has been omitted from the Proxy;

      B.    Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

      C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 4, 2022

**MONTEVERDE & ASSOCIATES PC**

/s/ Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*